**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>**Plaintiff,**<br>v.<br>[4] JOHAN TIRADO-AGUEDA,<br>**Defendant.** | **CRIM. NO. 23-125-4 (RAM)** |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge.

Pending before the Court is Defendant Johan Tirado-Agueda's ("Tirado" or "Defendant") *Objection to Presentence Investigation Report* (the "*Objection*"). (Docket No. 379). Defendant specifically objects to the Amended Presentence Investigation Report (PSR) filed by the US Probation Office (USPO) at Docket No. 369 eliminating the mitigating role adjustment under USSG 3B1.2(b) and the concomitant additional reductions in the offense level under USSG 2D1.1(a)(5) that were originally given in the First PSR at Docket No. 344. The Government filed a *Response to Objection to the Amended PSR and Sentencing Memorandum* (Docket No. 380). Having considered the parties' written submissions, the Court **DENIES** the Defendant's objections.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the arrest of Tirado, who was part of a pickup crew that retrieved approximately 467 kilograms of cocaine

from a yola-type vessel at a beach in Las Picuas, Rio Grande, Puerto Rico.

According to the Amended PSR's unobjected description of the offense conduct, on March 17, 2023, at approximately 11:20 a.m., law enforcement received information from a confidential source of the presence of a drug-smuggling offload crew at Las Picuas, a known smuggling area at a beach located in Rio Grande, Puerto Rico. (Docket No. 369 ¶ 13).

Law enforcement agents observed a silver Ford F150 parked in the brush near the beach. Id. ¶ 15. As the agents approached the vehicle, individuals opened the doors and ran. Id. When law enforcement arrived at and secured the vehicle, they saw what appeared to be, based on their training and experience, bales of cocaine on the floor of the rear passenger area and in the bed of the truck. Id.

Simultaneous to the stop of the Ford F150, law enforcement observed a white Dodge Caliber, bearing two individuals, traveling down a dirt road to the beach. Id. ¶ 16. When law enforcement approached attempting to conduct a stop of the Caliber, the Caliber attempted to flee. Id. Law enforcement agents then ordered the occupants to exit the vehicle. Id. The occupants were identified as Tirado and co-defendant Wilfre Manuel Reyes-Pimentel. Id. Law enforcement recovered approximately 12 bales containing approximately 467 kilograms of cocaine.

On February 24, 2026, this Court held a Change of Plea hearing where Tirado entered into a "straight plea" with the Government. (Docket No. 138). During the presentence interview with probation, Tirado avers that he accepted as true the same facts that co-defendants Montilla, Cespedes, Marte, and Vazquez admitted in their respective plea agreements. (Docket No. 379 at 2).

On April 17, 2026, the probation officer issued the original PSR which started with a base offense level of 38. (Docket No. 344). The offense level computation started with a base offense level of 38 because the offense involved 450kg or more of cocaine pursuant to U.S.S.G. § 2D1.1(b)(1). (Docket No. 344 ¶ 35). The PSR awarded a 4-level minimal participant mitigating role downward adjustment under U.S.S.G. § 3B1.2 reporting a total offense level of 34, above 30 thus necessitating a further downward adjustment to 30 under U.S.S.G. § 2D1.1(a)(5)(ii). Id. After the 3-point acceptance of responsibility deduction in U.S.S.G. § 3E.1.(a) & (b) and the zero-point offender adjustment in U.S.S.G. § 4C1.1(a)(1)-(11), the resulting total adjusted offense level was 21. Id. ¶ 45. The resulting guideline sentencing range was from 37 to 46 months. (Docket No. 379 at 1).

On August 5, 2026, the probation officer issued an Amended PSR which started with the same base offense level of 38. (Docket No. 369). This PSR, however, removed the 4-level minimal participant mitigating role downward adjustment under U.S.S.G. §

3B1.2, preserving the other adjustments, reporting a total offense level of 33. Id. ¶ 35. The Second Addendum stated that the Probation Office found that there was not sufficient evidence to determine that Defendant was less culpable than the co-defendants or than the average participant and that the defense, who has the burden of proof, has not provided any documentation to support a mitigating role adjustment. (Docket No. 373).

Tirado filed his *Objection* to the Amended PSR on September 9, 2026. (Docket No. 379). Tirado argued that none of the underlying facts as delineated in the PSR had changed despite having given a "straight plea" and none of the actions highlighted by the Government justify denying Tirado a minimal role adjustment pursuant to United States v. Guía-Sendeme, 134 F.4th 611 (1st Cir. 2025) or the November 1, 2025, amendments. Id. at 5-9. The crux of Tirado's argument was that he was substantially less culpable than the average participant, as he was a loader, or a mere "laborer[,] with no planning role, no navigational authority, no organizational knowledge, and no direct responsibility for narcotics," while the average was more akin to "recruiter(s) or the at-sea transfer crew." Id. at 7, 11. Tirado further highlights that under the November 1, 2025, amendments, the four-level reduction is "'generally warranted' when a defendant's primary function was 'plainly among the lowest level of drug trafficking functions, such as serving as a courier, running errands, sending

or receiving phone calls or messages, or acting as a lookout,'" and that this applies "regardless of whether the defendant was substantially less culpable than the average participant in the criminal activity." Id. at 6 (citing U.S.S.G. § 2D1.1(e)(2)(B)).

The Government, in its *Response* filed on September 15, 2026, argued that Defendant cannot meet his burden to show that he is entitled to the mitigating role adjustment because Tirado's primary function in the offense was not "plainly among the lowest level of drug trafficking functions," as Tirado was a loader and unloader of bales of hundreds of kilograms of cocaine over international borders. (Docket No. 380 at 5-6). Moreover, Tirado had done this similar task on no less than five prior occasions for the organization. Id. at 6. On one of those occasions, Tirado reported that firearms were intended to be sent back to the Dominican Republic, and Tirado housed and fed some of the captains of these maritime drug smuggling ventures. Id. at 6-7.

Additionally, the Government argued that Tirado's role here was very similar to that of the defendant in Acosta, who was also a loader of hundreds of kilograms of cocaine. United States v. Acosta, No. CR 22-380 (RAM), 2026 WL 1991722 (D.P.R. July 2, 2026). In Acosta, this Court denied the mitigating role adjustment to the defendant because a loader of hundreds of kilograms of cocaine is not akin to a courier or another "low-level drug trafficking function," like "distributing controlled substances in user level

quantities for little or no monetary compensation or with a primary motivation other than profit" to qualify for a 2-point deduction under the special instruction in U.S.S.G. 2D1.1(e)(2)(B)(ii). Id.

Based on the five, non-exhaustive factors in U.S.S.G. § 3B1.2, the Government argued that Tirado did not qualify for a mitigating role. Id. at 8-9. The Government, highlighting three of the five factors, contends that: (A) Tirado's actions show he understood the scope and structure of the criminal activity by his status as a "veteran drug-smuggler," someone who thus understood that the organization was moving hundreds of kilograms of cocaine on multiple occasions; (B) the nature and extent of Tirado's participation in the criminal activity and the discretion he exercised is shown by this being his sixth drug-smuggling venture, and that he has housed and fed captains of the drug smuggling boats and found engines for those boats; and (c) Tirado stood to receive between $4,000 and $13,000 from the criminal activity. Id. The Government further pointed to the value of the cocaine, in the millions, as evidence that Defendant was a trusted member of the drug trafficking organization. Id. at 5-6. The Government also argued that assisting in the transport of 467 kilograms of cocaine is not a low-level trafficking function. Id.

Both Tirado and the Government performed the U.S.S.G. § 3B1.2 mitigating role analysis required by the First Circuit in Guía-Sendeme, 134 F.4th at 611 and the special instruction on the

application to U.S.S.G. § 3B1.2 to U.S.S.G. § 2D1.1 cases that is part of the November 1, 2025, amendments to the Sentencing Guidelines. (Docket Nos. 379 and 380); USSG § 2D1.1 (e)(2) (Application of § 3B1.2 (Mitigating Role) to § 2D.1.1. Cases). Unsurprisingly, the two parties disagree on whether Tirado is eligible for the mitigating role adjustment.

## II. APPLICABLE LAW

### A. Mitigating Role Adjustment under U.S.S.G. § 3B1.2.

Under the United States Sentencing Guidelines, downward adjustments are available for defendants who played a mitigating role in the relevant criminal activity. Section 3B1.2 of the Guidelines allows a sentencing court to decrease a defendant's offense level by four if he is deemed a minimal participant, two levels if he is deemed a minor participant, and three levels if his role in the offense falls somewhere in between. *See* U.S.S.G. § 3B1.2; *see also* United States v. Andino-Rodríguez, 79 F.4th 7, 31 (1st Cir. 2023); United States v. De la Cruz-Gutiérrez, 881 F.3d 221, 225 (1st Cir. 2018). These adjustments apply to "defendants whose role in the offense make them 'substantially less culpable than the average participant in the criminal activity.'" United States v. Mendoza-Maisonet, 962 F.3d 1, 23 (1st Cir. 2020) (quoting U.S.S.G. § 3B1.2 cmt. n.3(A)).

The designation of "minimal" participant is "intended to cover defendants who are plainly among the least culpable of those

involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. n.4. A "defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant." Id. Alternatively, a "minor" participant is a defendant "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." Id. cmt. n.5.

The Commentary notes that a "defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." Id. cmt. n.3. Furthermore, the "**fact that a defendant performs an essential or indispensable role in criminal activity is not determinative**." Id. (emphasis added). While a defendant may receive an adjustment if he or she is "substantially less culpable than the average participant in the criminal activity," this does not mean that "every such offender is entitled to a mitigating role adjustment; it merely instructs that every such offender 'should be considered for a mitigating role adjustment.'" United States v. Arias-Mercedes, 901 F.3d 1, 9 (1st Cir. 2018) (quoting U.S.S.G. App. C, Amend. 794).

The determination of whether to apply an adjustment, and the level of which, is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. n.3(C); *see* United

States v. Pérez, 819 F.3d 541, 545 (1st Cir. 2016) ("Role-in-the-offense determinations are notoriously fact specific."). A "defendant seeking the mitigating role adjustment 'bears the burden of proving, by a preponderance of the evidence, that he is entitled to the downward adjustment.'" Mendoza-Maisonet, 962 F.3d at 23 (quoting Arias-Mercedes, 901 F.3d at 5).

In assessing whether a defendant has met this burden, the Court should engage in a four-part analysis: (1) identifying the universe of participants involved in the relevant criminal activity; (2) ordering each participant along a continuum of culpability; (3) identifying the average participant across all likely participants; and (4) comparing the defendant's role in the criminal activity to the average participant's role. *See* Guía-Sendeme, 134 F.4th at 617.

At step one, the Court "must identify the 'relevant conduct as a whole' . . . a legal determination requiring a court to identify the 'scope of the conduct for which the defendant is being held accountable.'" Id. at 622 (quoting Arias-Mercedes, 901 F.3d at 6-7). "Any determination as to a 'defendant's role in the offense is to be made on the basis of all conduct within the scope of [U.S.S.G.] § 1B1.3 (Relevant Conduct) . . . and not solely on the basis of elements and acts cited in the count of conviction.'" Id. at 619 (quoting U.S.S.G. ch.3, pt. B, introductory cmt.). The scope of relevant conduct defined by U.S.S.G. § 1B1.3 for a

"jointly undertaken criminal activity" is "all acts and omissions of others that were – (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). This includes not only the activities "'that occurred during the commission of the offense of conviction,' but also all those undertaken 'in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.'" Guía-Sendeme, 134 F.4th at 619 (quoting U.S.S.G. § 1B1.3(a)(1)(B)). Importantly, "the scope of the 'jointly undertaken criminal enterprise' is not necessarily the same as the scope of the entire conspiracy." U.S.S.G. § 1B1.3, cmt. n.3(B). For example, as applied to a drug distribution conspiracy case, "relevant conduct constitutes only those drug shipments with which the defendant is personally aware, not other shipments facilitated by the broader conspiracy for which the defendant is unaware." Guía-Sendeme, 134 F.4th at 619. Therefore, when performing a mitigating role assessment, the Guidelines require the sentencing court "to limit the scope of the inquiry to the drug shipments for which the defendant is accountable." Id. at 620 (citing U.S.S.G. § 1B1.3, cmt. n.3(b), n.4(A)(i)). Within that relevant conduct, a court "must compare the defendant against all likely participants involved with the shipment, including those involved with the

shipment's preparation and efforts to avoid detection." Id. at 620 (citing U.S.S.G. § 3B1.3(a)(1)(B)).

Next, the Court conducts a fact-specific inquiry "to identify the universe of participants involved in the particular conduct." Guía-Sendeme, 134 F.4th at 622. A "participant" is someone "who is criminally responsible for the commission of the offense, but need not have been convicted." Arias-Mercedes, 901 F.3d at 6 (quoting U.S.S.G. § 3B1.1 cmt. n.1). "To be considered a participant, there must be sufficient evidence of the person's existence and involvement in the crime." Guía-Sendeme, 134 F.4th at 617; *see also* United States v. Flores-Álvarez, No. 23-1163, 2025 WL 1369300, *2 (1st Cir. May 12, 2025) (stating a participant's "involvement in the crime must be identifiable or discernable from the record"). A sentencing court cannot assess a mitigating role adjustment "based on suppositions woven entirely out of gossamer strands of speculation and surmise." Arias-Mercedes, 901 F.3d at 7 (citations omitted). But it should consider the broader universe of reasonably discernible participants. *See* Guía-Sendeme, 134 F.4th at 619 ("Courts must consider a universe composed of those involved in the defendant's relevant conduct as a whole.") (cleaned up).

At step two, the Court must order each participant along a continuum based on their degree of culpability in the criminal activity. Id. at 617; *see* Andino-Rodríguez, 79 F.4th at 34 (finding First Circuit "case law is clear that all parties engaged in a

criminal enterprise can be located on a continuum"). "Those who are primarily responsible stand on one end, while the least culpable participants . . . stand at the opposite end." United States v. Walker, 89 F.4th 173, 185 (1st Cir. 2023) (cleaned up). "When a defendant stands somewhere in the middle [of the continuum] . . . a district court may reasonably infer the defendant is not substantially less culpable than the average participant." Andino-Rodríguez, 79 F.4th at 34 (cleaned up).

At step three, from that continuum, courts must "identify the average participant across all likely participants in the criminal scheme." Guía-Sendeme, 134 F.4th at 617. In determining this average, "the court need not identify a single average participant among the universe of discernable participants involved in the relevant conduct" nor "engage in a precise, numerical calculation." Id. (cleaned up). Rather, courts should seek a "ballpark average among those involved in the relevant conduct." Id.

At step four, when comparing the defendant's role in the criminal activity to the average participant's role, courts have a two-part inquiry. A defendant must first demonstrate, as a threshold matter, they are "substantially less culpable than the average participant in the criminal activity." Mendoza-Maisonet, 962 F.3d at 23 (quoting U.S.S.G. § 3B1.2 cmt. n.3(A)). "If that requirement is met, then a district court must evaluate the

defendant's classification among the pool of defendants eligible for an adjustment." Walker, 89 F.4th at 185 (internal citations omitted). Defendants must either demonstrate they are "**less culpable than most** other participants in the criminal activity" for a minor participant reduction or "plainly **among the least culpable** of those involved" for a minimal participant adjustment. Guía-Sendeme, 134 F.4th at 617 (quoting U.S.S.G. § 3B1.2 cmt. n.4 and 5). "[T]he fact that someone else might have been more culpable than [the] defendant] does not necessarily mean that [the defendant's] participation was minor [or minimal]." De la Cruz-Gutiérrez, 881 F.3d at 226.

When measuring the defendant's culpability against that of the average participant, the Commentary Notes state that a court should consider the following non-exhaustive list of factors when assessing a defendant's role:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(C).

The purpose of the five factors is not to establish guilt, but "to help a court decide whether to apply leniency because a defendant, while guilty, played a substantially subordinate role in the criminal activity." Guía-Sendeme, 134 F.4th at 624; Flores-Álvarez, 2025 WL 1369300, at *3 ("The purpose of these five factors is to ultimately measure a defendant's culpability against that of the average participant who took part in the criminal activity."). "An evaluation of these factors does not require extensive analysis, but it does require both a judgment about the defendant's own conduct and a comparison to the other participants." Walker, 89 F.4th at 187 (internal citations omitted).

**B. Application of U.S.S.G. § 3B.1.2 to U.S.S.G. § 2D1.1 Cases.**

Under the November 1, 2025, Amendments to the Sentencing Guidelines, the Guía-Sendeme gauntlet is but the beginning in drug trafficking cases. Now, even if the Defendant **cannot** establish that he is "substantially less culpable than the average participant" under an ordinary application of § 3B.1.2 and Guía-Sendeme, a mitigating role adjustment may be available in cases covered by U.S.S.G. § 2D.1. *See* U.S. Sent'g Comm'n, Guidelines Manual § 2D.1 (Nov. 2025). This means that a sentencing court must now evaluate defendant's role under both 3B1.2 (and Guía-Sendeme) and under the special instructions to U.S.S.G. § 2D.1.

The special instructions in § 2D.1(e)(2)(B) provide that a mitigating role adjustment is generally warranted for "low-level" and "lowest level" **drug trafficking functions "regardless of whether the offense involved other participants in addition to the defendant, and regardless of whether the defendant was substantially less culpable than the average participant in the criminal activity" is "based on the totality of the circumstances and involves a determination** that is heavily dependent upon the facts of the particular case." Federal Sentencing Guidelines Manual § 2D1.1 ("FCJ-FSG § 2D1.1") (emphasis added).

The special instructions establish that a 4-point minimal participant deduction under U.S.S.G. § 3B1.2(a) "is generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout." U.S.S.G. § 2D.1(e)(2)(B)(i). The special instructions alternatively provide that a 2-point minor participant deduction under §3B1.2(b) is warranted if:

> [T]he defendant's primary function in the offense was performing another low-level trafficking function, such as distributing controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit (e.g., the defendant was otherwise unlikely to commit such an offense and was motivated by an intimate or familial relationship, or by threats or fear to commit the offense).

U.S.S.G. § 2D1.1(e)(2)(B)(ii).

If the Defendant qualifies for a mitigating role adjustment, then additional downward adjustments flow from U.S.S.G. § 2D.1(a)(5) "regardless of whether the defendant receives the required [mitigating role] adjustment from by direct application of §3B1.2 **or** by use of the special instruction in subsection (e)(2)(B)." *See* U.S.S.G. § 2D1.1(E)(2)(C) (emphasis added).

## III. ANALYSIS

### A. Tirado did not perform a low-level drug trafficking function and does not qualify for a mitigating role adjustment under the special instructions for application of U.S.S.G. § 3B1.2 to U.S.S.G. § 2D1.1 cases.

Under the special instructions in Section 2D.1(e)(2)(B), the key question is whether Tirado's primary function of loading hundreds of kilograms of cocaine falls within the definition of being "plainly among the lowest level of drug trafficking functions," found in U.S.S.G. § 2D.1.(e)(2)(B)(i). The Court's view is no, based on the examples of "lowest level of drug trafficking functions" that follow, including "courier, running errands, sending or receiving phone calls or messages, or acting as lookout." These roles are defined by their "menial and peripheral nature."[1] Acosta, 2026 WL 1991722, at *7.

Considering the totality of the circumstances and narrowing it to its essence, Tirado's primary function was loading hundreds

[1] For a more fulsome discussion of why these roles are substantially similar in their simplicity and low-level culpability, *See* Acosta, 2026 WL 1991722, at *7-*8.

of kilograms of cocaine for transport. The Court rejects calling this role undertaken by Tirado in six separate drug smuggling ventures as akin to the menial, "lowest level" roles mentioned in the Guidelines. U.S.S.G. § 2D1.1(e)(2)(B)(i); *See, e.g.*, Acosta, 2026 WL 1991722, at *7 (finding that a defendant who loaded and transported hundreds of kilograms of cocaine was not akin to a "courier" or other examples of the "lowest level of drug trafficking functions").

Likewise, Tirado's primary function cannot be minimized and equated to the examples of "another low-level drug trafficking function" like "distributing controlled substances in user level quantities for little or no monetary compensation or with a primary motivation other than profit" to qualify for a 2-point deduction under the special instruction in U.S.S.G. § 2D1.1(e)(2)(B)(ii). *See* Rivas Contreras, 2026 WL 412482, at *3 (holding that U.S.S.G. § 2D1.1(e)(2)(B)(i) must be read in harmony with U.S.S.G. § 2D1.1(e)(2)(B)(ii) and thus a defendant under the former special instruction must be less involved than a defendant under the latter). Obviously, 467 kilograms of cocaine are not a "user level quantity."

The Court's conclusion that Tirado does not qualify for the mitigating role under the special instructions to U.S.S.G. § 2D1.1 is bolstered by First Circuit case law under U.S.S.G. § 3B1.2, which considers the quantity and value of drugs transported as

factors in assessing the defendant's role. *See, e.g.*, De la Cruz-Gutierrez, 881 F.3d at 227 (upholding district court's inference that defendant was a person of trust within the drug trafficking organization due to his participation as a crew member aboard a small vessel smuggling millions of dollars in cocaine); United States v. Vargas, 560 F.3d 45, 51 (1st Cir. 2009) ("[T]he large quantity of drugs hauled by the defendant was a relevant datum in assessing role in conspiracy.").

**B. Tirado is not less culpable than the average participant under analysis mandated by Guía-Sendeme and thus does not qualify for a mitigating role adjustment under the standard U.S.S.G. § 3B1.2 analysis.**

Similarly, Tirado does not qualify for a mitigating role adjustment under the standard U.S.S.G. § 3B1.2 analysis mandated by Guía-Sendeme, 134 F.4th at 620-22.

First, the scope of the conduct for which the Defendant is being held accountable is the drug smuggling venture that occurred on March 17, 2023. *See* id. at 622. This includes activities undertaken in preparation for that offense, to "compare the defendant against all likely participants involved with the shipment." Id. at 620.

Next, based on the Amended PSR and the safety valve interview provided by the Government (Docket Nos. 369 and 380-1), the Court can identify the following participants in this drug-smuggling event: (a) the supplier of the cocaine; (b) the receiver who would

take possession of the cocaine; (c) the recruiters known as "Ronny", "Potro", and "Yandriel"; (d) the boat crew; and (e) the loaders, such as Tirado himself, co-defendant Wilfre Manuel Reyes-Pimentel, and "Pachango."

Second, based on the facts provided, the Court views the continuum of culpability as follows: (a) the supplier of the cocaine; (b) the receiver who would take possession of the cocaine; (c) "Ronny", "Potro", and "Yandriel" who were recruiters; (d) the boat crew; and (e) the loaders, such as Tirado himself, co-defendant Wilfre Manuel Reyes-Pimentel, and "Pachango".

Third, based on the established continuum, the Court identifies the boat crew as the average participants.

Fourth, the Court compares Tirado's role to the average participant's role. A defendant must demonstrate as a threshold matter that they are "substantially less culpable than the average participant in the criminal activity." Mendoza-Maisonet, 962 F.3d at 23 (quoting U.S.S.G. § 3B1.2 cmt. n.3(A)).

Turning to the non-exhaustive list of factors in U.S.S.G. § 3B1.2 cmt. n.3(C) to measure Tirado's culpability against the average participant, both the boat crew members and the Caliber occupants, including Tirado, understood that the scope of the criminal activity they undertook was transportation of a bulk shipment of cocaine for compensation. *See* Acosta, 2026 WL 1991722, at *9 (holding that a loader as well as the boat crew knew the

scope of the drug smuggling venture). Tirado, like the other co-conspirators apprehended on March 17, 2023, exercised some discretion to perform their functions as they were all entrusted with the same large quantity of highly valuable, illegal cargo, emphasized further by the fact that this was Tirado's **sixth such venture**. (Docket No. 380 at 9).[2] But there is very little evidence to compare the remaining factors such as participation in planning the criminal activity, their degree of decision-making authority or the influence in the exercise of such authority, or the degree to which they stood to benefit.[3] Accordingly, those factors cannot be used to differentiate between Tirado and the average participants, much less conclude that he is substantially less culpable. While the supplier, the receiver, and the recruiters are more culpable than Tirado, that "does not necessarily mean that [the defendant's] participation was minor [or minimal]." De la Cruz-Gutiérrez, 881 F.3d at 226.

---

[2] The Court can consider evidence from the safety valve interview to assess Defendant's contention that he qualifies for a mitigating role. *See* United States v. Miller, 151 F.3d 957, 962 (9th Cir. 1998).

[3] *See* Docket No. 380-1 (safety valve interview). In Tirado's safety valve interview given on 6/24/2026, Tirado explains more intimate knowledge of the drug smuggling venture than was previously known. Id. at 3 (explaining that Tirado had not been completely truthful with the information he had provided in the first part of the interview). Tirado went on to describe his knowledge of the roles of various recruiters, fellow loaders, and other members of his past drug smuggling ventures, and how much he was paid and expected to be paid. Id. at 3-5. There is no information on how much the boat crew or recruiters were to earn for their roles. Beyond naming some other members, no new facts were developed such that the Court can compare the remaining factors.

All told, Tirado is not less culpable than the average participant under analysis mandated by Guía-Sendeme and thus does not qualify for a mitigating role adjustment under the standard 3B1.2 analysis.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Tirado's Objections to the Amended PSR. (Docket No. 379). Defendant's Total Offense Level is thus 31 as per the Government's *Response*. (Docket No. 380).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of October 2026.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE